McKNIGHT et al. v. CAGE et al. (No. 7447.)*

(Court of Civil Appeals of Texas. Dallas. Feb. 12, 1916. Rehearing Denied March 11, 1916.)

1. WILLS ☞487(1) — CONSTRUCTION — EVIDENCE.

Testatrix, after making numerous devises and bequests, declared that an agreement relating to a banking partnership of which testatrix was a member should be carried out, and that the residue of her property should be used by the trustees to erect a suitable main building for a college or a suitable boys' dormitory; the remainder to be used by the trustees as a permanent fund of the college in the manner and for the same purposes as its present permanent fund. Plaintiffs contended that as heirs they were entitled to the testatrix's share in the banking firm, which, under the agreement, was to be continued for five years after her death. This agreement, which was probated with the will, declared that at the expiration of five years all stock and interest held or deposits owned by the party dying should be delivered by the surviving members of the firm to the heirs of the party dying or to his or her legal representatives. Held, that evidence of the value of the testatrix's estate was admissible to show that plaintiffs were not entitled to such interest as heirs, for otherwise there would not be sufficient property to discharge all the bequests; such evidence not being inadmissible under the rule that parol evidence is not receivable to

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

change the meaning of the word "heir," the law giving it a definite meaning, for the testatrix's intent governs.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1029, 1031; Dec. Dig. ☞487(1).]

2. WILLS ☞506(1) — CONSTRUCTION—INTEREST DEVISED.

In such case, heirs of the testatrix not mentioned in a will are not entitled to her interest in the banking firm; the agreement declaring that it might go to the legal representatives of the deceased member as well as the heirs.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1090; Dec. Dig. ☞506(1).]

3. CHARITIES ☞12—VALIDITY.

In such case, the devise and bequest of the residue to the college was valid.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 36; Dec. Dig. ☞12.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Bertha McKnight and others against Bruce Cage and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

C. M. Smithdeal, of Dallas, for appellants. Thompson, Knight, Baker & Harris, of Dallas, and Marshall Ferguson, of Stephenville, for appellees.

RAINEY, C. J. Appellants brought this suit against appellees to construe the last will and testament of Mrs. M. J. Crow, deceased. The cause was tried with the aid of a jury, and a verdict was instructed by the court for the appellees; judgment was rendered accordingly, from which this appeal is taken.

The will of Mrs. Crow is lengthy, and we will confine ourselves to summary thereof, as shown by appellees' brief, with the exception of items 14 and 15, about which there is controversy, which items are copied in full, as follows:

"Item 1. Provides for payment of debts and funeral expenses.

"Item 2. She gives to her sister Mrs. Allday, and to her sister's four children, collectively, $15,000.

"Item 3. She gives her sister Mrs. Law, and her sister's seven children, collectively $24,000.

"Item 4. She gives to the widow of her deceased husband's brother, and to his six children, collectively, $21,000.

"Item 5. She gives to certain nephews and nieces of her deceased husband, collectively, $15,000.

"Item 6. She gives to business associates, collectively, $33,000.

"Item 7. She gives to J. H. Cage and Bruce Cage the bank building in Stephenville.

"Items 8 and 9. She gives all her real estate to her foster daughters, Mrs. Hanie Cage and Mrs. Bamah Young, the devises being in each case of specific tracts of land.

"Item 10. She provides that the real estate given in items 8 and 9 to Mrs. Hanie Cage and Mrs. Bamah Young, respectively, is valued at $40,000 to each, and that each may elect to take $40,000 in money in lieu of the real estate specifically devised, and provides: 'And in the event either one of them, or both of them, shall elect to receive $40,000 in cash in lieu of the property herein bequeathed to them, then I direct that this $40,000.00 in cash shall not be paid to them until the expiration of five years from my death.'

"Item 11. She gives a friend a horse and buggy and $1,000.

"Item 12. She gives another friend $3,000.

"Item 13. She provides against lapse of gifts previously made by making bequests inure to the benefit of descendants of devisees specifically named, providing that, 'if there be no child or children of such deceased person surviving, then such share shall become a part of the residue of my estate, to be disposed of by my executor for the uses and purposes and in the manner as hereinbefore provided.'

"Item 14. 'I expressly will, declare and direct that the agreement in writing made between me and J. H. Cage, John Cage, Day Cage, Jessie White and F. S. White, who with me constitute the firm of Cage & Crow, shall be in all respects adhered to, observed, and carried out, which agreement is dated September 14, 1910, and executed by myself and the above named parties and acknowledged by us before P. L. Pittman, a notary public in and for Erath county, Texas.'

"Item 15. 'And subject to all the foregoing legacies bequests and conditions and having in mind the affection my deceased husband, Doctor M. S. Crow, had for the people of Erath county, where we spent most of our life, and where we acquired most of our property and having ever had in my heart a deep interest and sympathy for worthy young men ambitious to better their lot in life, I hereby devise and bequeath to the Board of Trustees of John Tarleton College of Stephenville, Texas, for the use and benefit of said college forever all the residue of my estate of whatsoever nature and wherever found. And it is my desire that said trustees erect a suitable main building for said institution out of this bequest or out of so much thereof as they may deem necessary and practicable, should no such building exist at the time of my death or at the time that this bequest takes effect; and should a main building be erected before such time then it is my desire that such portion of this bequest as may be necessary shall be used by said trustees to erect a suitable boys' dormitory the balance of this bequest after the erection of either of said buildings, should any remain, to be used by said trustees as a permanent fund of John Tarleton College, and in the manner and for the same purposes as its present permanent fund is used and authorized to be used by the original will of John Tarleton establishing said institution.'"

The agreement mentioned in item 14 of the will, and made a part thereof, is as follows:

"This memorandum of agreement, made and entered into the day and year last herein written, by and between J. H. Cage, Day Cage, John Cage, Jessie White, joined pro forma by her husband, F. S. White, and Mrs. M. J. Crow, a widow, witnesseth: That whereas the parties hereinbefore named now constitute all the members of the firm of Cage & Crow, bankers, now engaged in a general banking business in the city of Stephenville, Texas, and realizing that in the event of the death of any one of us this partnership would be by operation of law dissolved, unless otherwise agreed among us, and desiring to protect our own interest and the interests of our bank, we hereby agree and covenant, one with another, that in the event of the death of any one of us, that the firm of Cage & Crow, bankers, shall not be by that event dissolved, but shall continue in force and operation as it existed at the death of any one of us, for a period of five years, and any deposit or other interest owned, or held by any one of us, in the firm of Cage & Crow, bankers, at the date of our death, shall remain in the custody and control of the surviving members of said firm of Cage & Crow, bankers, from the date of such death, for a period of five years, and after the expiration of five years from the date of the

death of either one of us, all stock and interest held, or deposit owned by the party dying shall be delivered by the surviving members of the firm to the heirs of the party dying, or to his or her legal representatives. And we by this contract expressly annul the agreement and contract entered into between us of date November 10, 1905.

"Witness our hands this 14th day of September, 1910.

　　　　　　　　　　　　　　"John Cage,
　　　　　　　　　　　　　　"J. H. Cage,
　　　　　　　　　　　　　　"Day Cage,
　　　　　　　　　　　　　　"M. J. Crow,
　　　　　　　　　　　　　　"F. S. White,
　　　　　　　　　　　　　　"Jessie White."

Said will and said agreement were executed at the same time and were duly probated as one instrument, and about this there is no controversy.

The evidence shows that Mrs. Crow's will was executed on September 14, 1910, and she died about nine days thereafter. She left no husband, nor heir in the descending or ascending line, and no nearer relative than two half-sisters who survived, and the children of three half-sisters, through whom appellants claim. Mrs. Crow's estate consisted of various tracts of land valued at $107,225, of shares of stock in the bank of Cage & Crow, valued at $35,000, and cash on deposit in said bank, $171,000, and Mrs. Crow had before her a statement of the foregoing properties when her will was written and presumably acted upon it.

[1] Appellants' first assignment of error is:

"The court erred in permitting the witness, John Cage, to testify, over the objection of the plaintiffs, to the value of Mrs. M. J. Crow's estate on July 1, 1910, and at the time her will was made, as fully shown by bill of exception No. A."

The proposition submitted is:

"The will of Mrs. M. J. Crow plainly provided that, upon the termination of the partnership, the money of the testatrix on deposit with Cage & Crow and her interest in the partnership assets should be delivered to her heirs; and, there being nothing in the context of the will itself to indicate that the testatrix intended to use the word 'heirs' in other than a technical sense, it was error to permit the introduction of extraneous facts tending to prove that the word 'heirs' meant legatees."

We think there was no error in admitting the testimony complained of. While parol evidence is not admissible to alter or change the meaning of the word "heir," because the law gives it a definite meaning, yet, when used in a will, the intention of the maker being the prime object of ascertainment where there is a contest and legitimate testimony is introduced to show that intention, such testimony will not be excluded, because it has a tendency to vary the strict technical meaning of the word "heir." Here the testimony pertained only to the value of the estate of Mrs. Crow, which was material and pertinent to the issue of Mrs. Crow's intention in the making of her will, and therefore cannot be objectionable because it has a bearing upon the meaning of the term heir in the connection it was used by her. In Weller v. Weller, 22 Tex. Civ. App. 247, 54 S. W. 653, in discussing

the rule for the construction of wills, it is said:

"Bearing in mind that the supreme rule of construction of wills is the ascertainment of the intentions of the testator, and to this end we should consider the condition of his estate at the time of making his will, the circumstances under which it was made, and the primary object of the testator in executing the instrument, and for this purpose technical words and terms in conflict with the evident intention of the testator may be disregarded, and that construction adopted which seems to conform more closely with his main purpose in executing the will."

We think the value of an estate would be of importance in shedding light upon the condition of the testator's estate and circumstances which surrounded him, because he is at the time of making the will dealing with the conditions and circumstances surrounding him.

What is here said disposes of the second assignment of error, which also complains of the testimony relating to the value of the estate.

[2] It is contended by appellant that by item 14 of Mrs. Crow's will she intended that the shares of stock and the deposit in the Cage & Crow bank should be taken over by appellants as a specific legacy as their property.

In item 14, Mrs. Crow refers to the agreement between herself and the partners constituting the firm of Cage & Crow, and was executed at the same time as the will. Said agreement provided for the continuation of the partnership for five years, at the end of which time "all stock and interest held, or deposit owned by the party dying shall be delivered by the surviving members of the firm to the heirs of the party dying, or to his or her legal representative." Said item 14 makes no testamentary disposition of property by its terms, nor does the agreement referred to do so. The will merely refers to the agreement as having been entered into by Mrs. Crow and evidences an intention that the partnership existing shall continue for five years after the contingency named should happen; then, as between the partners the interest and deposits of each was to be turned over to the parties entitled thereto. The appellee claims that the appellants as heirs were entitled thereto and should receive it. They ignore the expression "legal representatives," used in the agreement. We do not concur in appellants' claim. Mrs. Crow died testate, and by her will she made numerous bequests, naming the legatees and a special bequest of the residue which disposed of all her property, and in none of said bequests were the appellants specifically named.

The supreme object in the construction of a will is to ascertain the intention of the maker. When we consider the condition of Mrs. Crow's estate, the circumstances surrounding her, and the wording of her will, we conclude that she never intended that the appellants should inherit any of her estate.

She provided for an executor who qualified and took possession of her estate, and who was authorized, as representative of Mrs. Crow, to take charge of her property in the partnership, in accordance with the agreement she had entered into.

A circumstance showing Mrs. Crow's intention against appellants' taking under the will is to be found in items 8 and 9 of the will, which bequeaths to two foster daughters of herself and husband certain tracts of land, the part allotted to each valued at $10,000, and item 9 provides that, if either shall elect to receive cash in lieu of the land, cash was to be paid. If these two parties had elected to receive cash instead of land, that, with the other cash legacies, would amount to more than the cash on hand, and thereby defeating the object of the will to at least the amount of the deficit. This Mrs. Crow evidently intended not to do.

[3] We are of the opinion that the objections urged to the clause of the will bequeathing the residue of the estate to John Tarleton College are without merit, and are overruled.

Believing as we do that it was the intention of Mrs. Crow that the appellants should not receive anything under her will, the judgment is affirmed.